UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRUNO FLEMING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PROVEST CALIFORNIA LLC, et al.,<br><br>　　　　Defendants. | Case No. 21-CV-04462-LHK<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 11 |

Plaintiff Bruno Fleming ("Plaintiff") brings the instant lawsuit against Defendants ProVest California LLC and Hector Torres (collectively, "Defendants"). Before the Court is Plaintiff's motion to remand.[1] Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion to remand.

**I.  BACKGROUND**

  **A. Factual Background**

Plaintiff Fleming incurred a consumer credit debt at some unknown time for personal,

---

[1] Plaintiff's motion to remand contains a notice of motion that is separately paginated from the points and authorities in support of the motion. Civil Local Rule 7-2(b) requires that the notice of motion and the points and authorities in support of the motion be contained in one document with the same pagination for a total of no more than 25 pages. *See* Civ. Loc. R. 7-2(b).

family, or household purposes. *See* ECF No. 1, Ex. A ("Compl.") ¶ 42. The debt was consigned and/or otherwise assigned to Gurstel Law Firm, P.C. *Id.* ¶ 44.

On April 16, 2019, Gurstel Law Firm filed a lawsuit against Plaintiff in the Superior Court of Santa Clara County, captioned *Absolute Resolutions Investment, LLC v. Bruno Fleming*, Santa Clara County Case No. 19-CV-346373, in an attempt to collect the debt. *Id.* ¶ 45. Gurstel Law Firm engaged Defendants to serve Plaintiff by delivering to him a copy of the state court summons and complaint. *Id.* ¶46. Defendant ProVest is a Delaware limited liability company that composes and sells "forms, documents, and other collection media used or intended to be used for debt collection," including service forms. *Id.* ¶ 9, 57. Defendant Torres is a process server who is an employee or authorized agent of ProVest. *Id.* ¶ 10, 47, 57.

Plaintiff alleges that on April 7, 2020 Defendants filed a proof of service of summons with the Superior Court of Santa Clara County. ¶ 48. Defendants allegedly represented in the proof of service of summons, under penalty of perjury, that Defendant Torres "personally served Plaintiff with a copy of the Summons, Complaint, and related documents in the collection action on March 21, 2020, at 1:59 p.m." *Id.* ¶ 47. According to Plaintiff, this never happened—he was never served with the process in the state debt collection action. *Id.* ¶ 54. Plaintiff alleges Defendants are engaged in the practice of "sewer service"—"failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment can be entered against him." *Holmes v. Elec. Doc. Processing, Inc.*, 966 F. Supp. 2d 925, 933 (N.D. Cal. 2013); *see* Compl. ¶ 1.

On October 12, 2020, Plaintiff received a request for entry of default in the mail, stating "there was a Judgment pending against" Plaintiff. Compl. ¶ 55. This was Plaintiffs' first notice of the state debt collection action against him. *Id.*

**B. Procedural History**

Plaintiff filed his Complaint against Defendants on April 2, 2021 in the Superior Court of Santa Clara County. ECF No. 1 ¶ 1.

Defendants filed an answer to the Complaint on June 9, 2021, *id.* ¶ 5, and removed the

2

Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

action to this Court on June 10, 2021 on the basis of federal question jurisdiction under 28 U.S.C. § 1331, ECF No. 1; *id.* ¶ 8.

Plaintiff filed the instant motion to remand on June 21, 2021. ECF No. 11. Defendant's filed their opposition on July 6, 2021. ECF No. 13. Plaintiff filed a reply also on July 6, 2021. ECF No. 14.

## II.   LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

The party seeking removal "bears the burden of establishing" federal jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). The court accepts all "facts alleged in the notice of removal as true, and draw[s] all reasonable inferences in" the nonmovant party's favor. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1098 (9th Cir. 2018).

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

## III.   DISCUSSION

Plaintiff seeks to remand the instant case to state court for lack of standing. According to Plaintiff, the Complaint solely asserts a bare procedural violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq.* ("FDCPA"), and thus does not sufficiently allege a concrete harm to confer standing to Plaintiff. Mot. at 2-4. Defendants contend the Complaint sufficiently alleges that Plaintiff has Article III standing. Opp'n at 4-8.

Below, the Court first discusses Article III standing requirements in the Ninth Circuit and

3

the impact of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), decided while the parties briefed the instant motion. The Court then applies the Ninth Circuit Article III standing framework, in light of *TransUnion*, to the instant case. The Court concludes that even after *TransUnion*, the Complaint sufficiently alleges Article III standing for Plaintiff's FDCPA claims.

### A. *TransUnion* Likely Alters the Ninth Circuit Article III Standing Framework

Article III requires plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiff's argument focuses only on the "concreteness" of the "injury in fact." Mot. at 4. The Ninth Circuit has explained that an "injury in fact" requires there be "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (cleaned up). Plaintiff alleges there is no "concrete" injury because the Complaint only asserts a bare procedural violation of the FDCPA. Mot. at 4. The Court first explains the Ninth Circuit framework for determining whether a statutory violation is a "concrete" harm and then considers how *TransUnion* has impacted that analysis.

In recent years, the United States Supreme Court has twice examined constitutional standing requirements in the context of procedural violations of the Fair Credit Reporting Act ("FCRA"), first in *Robbins v. Spokeo*, 136 S. Ct. 1540 (2016), and then in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

Generally, the difficulty with identifying whether an injury in fact is "concrete" lies with the type of harm alleged. Under *Spokeo*, "traditional tangible harms, such as physical harms and monetary harms" will "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204. However, "intangible harms can also be concrete." *Id.* To decide whether intangible injuries are sufficiently "concrete" a court must "consider both history and legislative judgement." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019). After *Spokeo*, the Ninth Circuit outlined a two-part test to determine whether a violation of a statutory right constitutes concrete

4

harm: "(1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel*, 932 F.3d at 1270-71.  Thus, if the alleged harm is intangible, at step one the court looks to history and legislative judgment.  *Id.* at 1270.  If the statute codifies a substantive right, then the analysis stops at the first step because *every* violation of the statute is a concrete harm.  *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 n. 8 (9th Cir. 2020) (explaining that "procedural obligations . . . sometimes protect individual interests," while the violation of "a substantive right" always causes concrete harm (citation omitted)).  Otherwise, the analysis proceeds to step two.  However, the Ninth Circuit has signaled that at least some portion of the FDCPA is unlikely to have codified substantive rights because a plaintiff cannot plead "a cognizable injury in fact merely by alleging a violation of the FDCPA."  *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 (9th Cir. 2020) (abrogating prior decisions so holding).

While the parties were briefing the instant motion the United States Supreme Court further clarified *Spokeo* in *TransUnion*.  In *TransUnion*, the United States Supreme Court emphasized that "a concrete harm must have a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2205 (*quoting Spokeo*, 136 S. Ct. at 1549).  Tangible harms, including "[m]onetary harms" are among those that "readily qualify as concrete injuries under Article III."  *Id.*  Intangible harms also may be concrete, provided they satisfy the "close relationship" analysis, in which the "inquiry [is] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."  *Id.*

Furthermore, in *TransUnion,* the United States Supreme Court appears to have also concluded that "in a suit for damages, the mere risk of future harm, standing alone cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."  141 S. Ct. at 2210-11 (finding this argument "persuasive").

The Ninth Circuit has yet to apply *TransUnion* to the Ninth Circuit's "concrete" harm framework.  Accordingly, the Court will first consider *TransUnion*'s impact on the Ninth Circuit's

5

existing two-step framework for determining whether a statutory violation is a "concrete" harm.

In *Patel*, the Ninth Circuit explained that it adopted the two-step approach post-*Spokeo* because of the United States Supreme Court's guidance that "[t]he violation of a statutory right that protects against 'the risk of real harm' may be sufficient to constitute injury-in-fact, and under those circumstances a plaintiff 'need not allege any *additional harm* beyond the one Congress has identified.'" 932 F.3d 1264 (quoting *Spokeo*, 136 S. Ct. at 1550) (emphasis in original)). Applying this two-step framework in *Ramirez v. TransUnion LLC*, the Ninth Circuit found that 6,332 class plaintiffs had Article III standing because these plaintiffs showed there was a "significant risk that third parties" would learn inaccurate personal information about these 6,332 class plaintiffs. 951 F.3d 1008, 1027 (9th Cir. 2020), *reversed by TransUnion*, 141 S. Ct. 2190 (2021). The Ninth Circuit rejected TransUnion's argument that these 6,332 class plaintiffs did not have Article III standing because no inaccurate information was "disseminated to third parties." *Id.* The Ninth Circuit concluded that TransUnion's practice of providing reports with inaccurate information to potential creditors and employers,[2] in conjunction with the risk of third party access to the inaccurate information, as well as the federal government's awareness of the existence of this inaccurate information was "sufficient to show a material risk of harm to the concrete interests of all class members." *Id.*

However, the United States Supreme Court rejected the Ninth Circuit's conclusion in *TransUnion*. The United States Supreme Court first emphasized that for the 6,332 class plaintiffs, there was "no historical or common-law analog" to the alleged statutory violation because the "mere existence of inaccurate information in a database is insufficient to confer Article III standing." *TransUnion*, 141 S. Ct. at 2209. The United States Supreme Court also rejected the argument that the 6,332 class plaintiffs suffered a concrete harm "based on an asserted *risk of future harm*." *Id.* at 2210. The United States Supreme Court found "persuasive" TransUnion's argument that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify

---

[2] An additional 1,853 class members had shown that TransUnion disseminated inaccurate information to third parties such as potential creditors or employers. *Ramirez*, 951 F.3d at 1027.

as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." 141 S. Ct. at 2210-11.  In so concluding, *TransUnion* rejected the Ninth Circuit's finding that 6,332 class plaintiffs had standing under a theory of material risk of harm because "the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized." *Id.*

*TransUnion* appears to impact both steps of the Ninth Circuit framework.  At the first step, *TransUnion* could be broadly read to suggest that a historical or common-law analogue is *always* necessary in order for a court to find that an intangible harm is sufficiently concrete.  *Id.* at 2204 (noting that the concrete-harm requirement requires the courts to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.").  Put differently, *TransUnion* appears to suggest that substantive rights arising from Congressional statutes must have historical or common-law analogues because an injury cannot be concrete solely on "Congress's say-so." *TransUnion id.* at 2205 (quotation omitted); *see also Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) ("*TransUnion* suggests that it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury.").

However, the Court does not, and need not, determine the full extent of *TransUnion*'s impact on the first step of the Ninth Circuit's framework for two reasons.  First, in *Casillas v. Madison Ave. Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), a FDCPA case, then-Seventh Circuit Judge Amy Coney Barrett applied the Seventh Circuit's framework to determine whether statutory violations were concrete harms.  The Seventh Circuit framework is substantially similar to the Ninth Circuit's two-step framework in a FDCPA case.  *Compare* 926 F.3d at 333 (noting plaintiff must show the violation "harmed or 'presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect.") *with Patel*, 932 F.3d at 1270-71 (courts consider "whether the statutory provisions at issue were established to protect the plaintiff's concrete interests" and "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.").  In *TransUnion*, the United States

7

Supreme Court relied on, and approvingly cited, *Casillas*. *See* 141 S. Ct. at 2203, 2205, 2214. Given the overlapping frameworks between *Casillas* and the Ninth Circuit, the Court does not read *TransUnion* to be irreconcilable with the Ninth Circuit's step one analysis.

The second reason the Court need not consider *TransUnion*'s full impact at step one is because the Court need not determine whether the FDCPA provisions at issue codify a substantive right, or merely a procedural one. As discussed in more depth below, even if the FDCPA violations at issue are procedural, the Complaint still adequately pleads a concrete injury in fact under *TransUnion*.

Thus, the Court will follow the Ninth Circuit framework at step one and consider whether the FDCPA "provisions at issue were established to protect the plaintiff's concrete interests." *Patel*, 932 F.3d at 1270-71 (9th Cir. 2019).

At the second step, *TransUnion* also appears to be in serious tension with *Patel*'s conclusion that the second step is satisfied if "the specific procedural violations alleged in th[e] case actually harm, or *present a material risk of harm* to, such interests." (emphasis added)). *See Patel*, 932 F.3d at 1270-71. *TransUnion* appears to conclude that plaintiffs in a lawsuit for damages cannot rely on a material risk of harm from a statutory violation to show a "concrete" injury in fact. 141 S. Ct. at 2210-12.

However, the Court again need not determine to what extent *TransUnion* undermined, or even, overruled the existing Ninth Circuit "concrete" injury in fact inquiry at step two. As discussed more in depth below, in the instant case, at step two the Complaint alleges that the violation presents more than a material risk of harm and meets the stricter *TransUnion* standing requirements.

**B. Fleming's Complaint Sufficiently Alleges a "Concrete" Injury in Fact**

The Court now applies the Ninth Circuit framework, in light of *TransUnion*, to the facts of the instant case. Fleming relies on non-FDCPA cases to allege that the Complaint only alleges a bare procedural violation of the FDCPA and is insufficient to support Article III standing. Mot. at 2-5. Defendants rely on pre-*TransUnion* FDCPA cases to argue that the Complaint does

8
Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

sufficiently allege a "concrete" injury in fact to show Article III standing. Opp'n at 4-8.

### 1. The FDCPA Provisions at Issue Protect Consumers' Concrete Interests

The Ninth Circuit's first step requires the Court "[t]o identify the interests protected by the FDCPA" by examining the "'[h]istorical practice' and the 'legislative judgment' underlying the provisions at issue." *Adams*, 836 F. App'x at 546 (*quoting Campbell*, 951 F.3d at 1117). If the harm protected by the FDCPA bears a "close relationship" to harms that have been "traditionally regarded as providing a basis for a lawsuit," Plaintiffs have sufficiently alleged a concrete injury. *See Campbell*, 951 F.3d at 1118 (finding the Electronic Communications Privacy Act codified a substantive right to privacy because there are several actionable privacy torts at common law); *see also TransUnion*, 141 S. Ct. at 2209 (finding certain class members sufficiently alleged a concrete injury in fact because dissemination of inaccurate information to third parties under the FCRA was sufficiently similar to the tort for defamation).

Defendants however identify no historical practice and make no argument about historical or common-law analogues. The Court "has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). However, this obligation does not require the Court to manufacture standing arguments for either party. *See United States v. Sineneng-Smith,* 140 S. Ct. 1575, 1579 (2020) ("As a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (internal citation and quotation marks omitted)); *Cf. TransUnion*, 141 S. Ct. at 2204 (explaining that the concrete-harm inquiry "asks whether [the party] ha[s] identified a close historical or common-law analogue for their asserted injury.").[3] Accordingly, the Court cannot conclude there is a "close relationship" between the harm protected by the FDCPA and the harms that traditionally provide a basis for a lawsuit.

---

[3] The Court notes that Plaintiff's claims for sewer service may be similar to the common law tort of abuse of process. *See, e.g.*, *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006) (discussing abuse of process claim in the context of fraudulent declarations regarding service).

9

Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

The Court now turns to legislative judgement in determining whether the FDCPA "provisions at issue were established to protect the plaintiff's concrete interests." *Patel*, 932 F.3d at 1270-71 (9th Cir. 2019). Defendants rely on numerous district court cases analyzing Congressional judgment and uniformly concluding that the FDCPA was established to protect plaintiffs' concrete interests. Opp'n at 5-7. Plaintiff fails to point to any case concluding otherwise. The Court agrees with the uniform line of authority.

Congress enacted the FDCPA "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting S. Rep. N. 95-382, at 1 (1977)) ("Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'"). Collection practices include litigation activities. *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("[L]itigating . . . seems simply one way of collecting a debt."); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) (applying *Heintz* to conclude that FDCPA applies to service of complaints on consumers).

Specific to the practice of "sewer service", numerous district courts, including this Court, have concluded that engaging in sewer service can be an abusive debt collection practice under the FDCPA because Congress sought to "capture abuses such as 'simulating legal process,' 'utilizing bogus legal documents,' and any other improper conduct 'not specifically addressed' but brought before a court." *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1074 (N.D. Cal. 2011) (quoting S. Rep. No. 95-382, at 1, 7); *see also Holmes v. Elec. Doc. Processing, Inc.*, 966 F. Supp. 2d 925, 932-33 (N.D. Cal. 2013) (rejecting the argument that sewer service is not a FDCPA violation); *Avina v. Patenaude & Felix, APC*, No. 20-cv-00166-BAS-MDD, 2021 WL 873336, at *4 (S.D. Cal. March 9, 2021) (concluding that the "FDCPA codifies Plaintiff's concrete interest in being free from abusive debt collection practices"). *TransUnion* does not undercut these

10

conclusions.  *See* 141 S. Ct. at 2204-05 (acknowledging that Congress's views can be instructive).

Accordingly, the Court follows this uniform authority and concludes that Congress sought to protect individuals' concrete interest in being free from abusive debt collection practices, which includes the practice of sewer service, when passing the FDCPA.  The Court now turns to step two of the analysis.

### 2. The Fleming Complaint Sufficiently Alleges the Risk of Material Harm Materialized

The Court now applies the Ninth Circuit framework's step two, in light of *TransUnion*'s apparent rejection that the mere risk of material harm in a damages suit is insufficient to show a concrete injury in fact.  The Court thus considers whether the sewer service allegations present a material risk of harm that has materialized, actually harm Plaintiff's interests under the FDCPA, or whether Plaintiff suffered an independent concrete injury flowing from the material risk of harm.  *TransUnion*, 141 S. Ct. at 2211.

Defendants argue the alleged injury in fact is "concrete" because (1) the Complaint sufficiently alleges that the FDCPA violations present a risk of harm to the interests Congress sought to protect, Opp'n at 4-5; (2) the Complaint also alleges that Plaintiff became aware of the lawsuit after receiving a Notice of Default and that Plaintiff hired "counsel to address the issues," Opp'n at 7-8; and (3) the Complaint seeks actual damages, which must mean that Plaintiff seeks recovery for emotional distress and humiliation, Opp'n at 8.  Plaintiff's sole reply to these arguments is to summarily argue that after *TransUnion*, *Spokeo* is "no longer good law."  Reply at 1.  The Court addresses each argument below.

The Fleming Complaint sufficiently alleges that the risk of harm to Plaintiff's concrete interests materialized.  The Ninth Circuit has explained that the FDCPA is intended, in part, to ensure "consumers are fully and truthfully apprised of the facts and of their rights,' ... enabl[ing] them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process."  *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014) (internal quotation marks omitted).  Service of process is essential to facilitating this full

11

Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

and meaningful participation because it "apprise[s] interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Thus, assuming the truth of the factual allegations in the Complaint regarding the filing of fraudulent proofs of service, these fraudulent proofs of service "presented a material risk to Plaintiffs' ability to properly engage in his own defense in the state collection action." *Avina*, 2021 WL 873336, at *5.  Moreover, such fraudulent service "increases the risk that [default] judgments will issue against consumers for outstanding debts under the false pretense that consumers were notified of an action against them but forfeited their right to raise a defense." *Id.*  This risk of harm falls comfortably within the "statutory protection afforded by the FDCPA." *Id.*  However, under *TransUnion* that is no longer sufficient.  Plaintiff must now show that this risk materialized and affected him personally.

Plaintiff does so.  Applying *TransUnion*'s more stringent requirement that the risk of harm materialized, the Complaint alleges that the first time Plaintiff heard of the state debt collection action against him was when he received notice that "there was Judgment *pending* against him." Compl. ¶ 55 (emphasis added).  Because of this notice "Plaintiff promptly sought the assistance of" legal counsel.  *Id.*  The factual allegations, accepted as true, created more than a mere risk of harm to Plaintiff.

Specifically, the fraudulent proof of service in the state debt collection action led to a pending default judgment against Plaintiff and Plaintiff's related legal costs.  Courts have held that legal costs spent defending debt collection actions qualify as more than the mere risk of harm.  *See Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665, 675 (E.D. Wis. 2018) (concluding allegations of an improperly brought action was sufficient to show real harm under the FDCPA due in part to the action's "attendant legal costs".); *Smith v. Moss Law Firm, P.C.*, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020) (legal costs spent defending a debt collection action can meet Article III standing inquiry); *cf. Janti v. Encore Capital Group, Inc.*, No. 09CV1969 JLS (CAB), 2010 WL 3058260, at *7 (S.D. Cal. Aug. 3, 2010) (noting that legal expenses in defense

12

of a collection action filed in state court can be sufficient to show injury in-fact under the California Unfair Competition Law, which is coextensive with Article III requirements). However, legal costs associated with affirmative lawsuits cannot create Article III standing. *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 866-67 (9th Cir. 2017 ) (explaining that "attorney fees and legal costs related to the underlying lawsuit "standing alone are insufficient to confer Article III jurisdiction where none exists on the merits of the underlying claim." (quotation omitted)).

Plaintiff's allegations do not allege an abstract risk of harm to "someone" but rather allege the risk of harm materialized "to the plaintiff[]." *Casillas*, 926 F.3d at 336; *cf. Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) (concluding that after "[d]rawing all reasonable inferences in favor of the nonmoving party," the Ninth Circuit could "fairly infer" that plaintiff's alleged confusion caused him to sign a liability waiver he otherwise would not have).

The facts of this case are also different from both the hypothetical found "persuasive" in *TransUnion* to explain why a risk of harm is insufficient to show a concrete injury, and *Frank v. Autovest*, 961 F.3d 1185, 1189 (D.C. Cir. 2020), a FDCPA case, that found no standing when plaintiff alleged misrepresentations in court affidavits.

In *TransUnion*, the United States Supreme Court explained that a motorist is exposed to a risk of harm when there is a reckless driver a quarter mile behind "dangerously swerving across lanes." 141 S. Ct. at 2211. Although the reckless driver has exposed the motorist "to a risk of future harm," the United States Supreme court explained the "risk does not materialize" if the motorist makes it home safely. *Id.* In *Autovest*, the D.C. Circuit concluded that misrepresentations in court affidavits are "certainly *capable* of causing a concrete and particularized injury" but required plaintiff to show that the alleged misrepresentations had that effect. 961 F.3d 1185, 1189 (D.C. Cir. 2020).

But unlike *TransUnion* and *Autovest*, Plaintiff here is not home safely and has sufficiently pled that the fraudulent proof of service caused a concrete injury. The Complaint pleads that the fraudulent proof of service specifically targeted Plaintiff, advanced the state debt collection action

13

1   against Plaintiff to a stage where default judgment was pending, and caused Plaintiff to obtain
2   legal representation to defend Plaintiff in the state debt collection action.

3         Lastly, Defendants also argue that Plaintiff seeks actual damages, and thus it would be
4   reasonable to assume that Plaintiff seeks recovery for emotional distress.  Opp'n at 8.  The Court
5   rejects this argument.  Although Defendants are correct that emotional distress may constitute
6   injury in fact, and the United States Supreme Court left the door open to such a possibility in
7   *TransUnion*, 141 S. Ct. at 2211 n.7, the Complaint here lacks such allegations.  In fact, the
8   Complaint contains *no* factual allegations that Plaintiff suffered emotional distress as a result of
9   the pending default judgment or the fraudulent proof of service.  Defendants cite no cases that find
10  that a request for actual damages, without more, constitutes a request for emotional distress
11  damages.

12        Because the Complaint sufficiently pleads that the pending default judgment and attendant
13  legal costs sufficiently show a concrete harm, the Court concludes the Complaint alleges that the
14  FDCPA violations alleged in this case do more than present a "risk of harm" to Plaintiff's interests
15  under step two.  Accordingly, under both the Ninth Circuit's two-step framework and *TransUnion*,
16  the Complaint sufficiently alleges a "concrete" injury in fact.

17  **IV. CONCLUSION**

18        Defendants have sufficiently shown, at the pleading stage, that the Complaint alleges a
19  "concrete" injury in fact for alleged violations of the FDCPA arising from alleged sewer service.
20  The Complaint alleges that Defendants obtained and used fraudulent proofs of service to advance
21  a state debt collection action against Plaintiff and a default judgment was pending against Plaintiff
22  when he first received notice of the action.  The Complaint also alleges that Plaintiff sought legal
23  counsel as a result of this notice.  At the pleading stage, these allegations are sufficient to show a
24  "concrete" injury in fact and Article III standing.  For all the foregoing reasons, Plaintiff's motion
25  to remand is DENIED.

26  **IT IS SO ORDERED.**

27  Dated: December 22, 2021

14

Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

United States District Court
Northern District of California

*Lucy H. Koh*
LUCY H. KOH
United States Circuit Judge[4]

---

[4] Sitting by designation on the United Stated District Court for the Northern District of California.

Case No. 21-CV-04462-LHK
ORDER DENYING MOTION TO REMAND

15